[No. 9738.  Department Two.  December 6, 1911.]

## Edwin T. Mauk, *Appellant*, v. P. P. Lee *et al.*, *Respondents*.[1]

Principal and Agent — Authority — Power of Attorney — Construction. A power of attorney for the transaction of the business of a firm, and to be "my personal representative in . . . any other matters that may arise during my absence demanding personal attention," authorizes the agent to conclude negotiations relating to a sale outside of the firm business, especially when construed in connection with correspondence relating to the subject.

Vendor and Purchaser — Contract — Rescission by Vendee — Tender — Evidence — Sufficiency. Under a contract of sale making time of the essence, in which the vendor agreed to furnish an abstract of title and deed within a specified time, the purchaser is entitled to rescind the contract where he made demand for the deed and tendered the purchase price to the vendor's authorized agent, the vendor being abroad, at the time fixed, and no deed or abstract was furnished until four days after demand and after notice of rescission.·

Same — Rescission by Vendee — Conditions Precedent. Neither the recording of the assignment of a contract for the purchase of land, nor the tender of a quitclaim deed, are conditions precedent to a rescission of the contract on account of the default of the vendor in furnishing an abstract and deed.

Appeal from a judgment of the superior court for Whatcom county, Hardin, J., entered April 15, 1911, upon findings in favor of the defendants, in an action to rescind a contract and recover money paid, after a trial on the merits before the court without a jury. Reversed.

*Solon T. Williams* and *William H. Heaton*, for appellant.
*C. A. Swartz* and *Hans Bugge*, for respondents.

Dunbar, C. J.—This is an action brought by the appellant, Edwin T. Mauk, against P. P. Lee and wife, respondents, for the purpose of recovering the sum of $800 and interest, paid as part payment on the purchase of certain lots

[1] Reported in 119 Pac. 185.

in the city of Bellingham, and is based on an alleged rescission of the contract of purchase. The respondents denied both the fact of the alleged rescission and the appellant's right to rescind, and asked for judgment in accordance with the written contract. The appellant demanded a jury, which was denied by the court, and the cause was tried to the court, resulting in findings, conclusions, and decree in favor of the respondents, the defendants below.

The contract was entered into between P. P. Lee and wife and one Hilda Hansen, whereby respondents agreed to sell to said Hilda Hansen, or her assigns, and said Hilda Hansen agreed to buy, certain real estate, located in the city of Bellingham, for the sum of $3,800. Under this contract, Hilda Hansen paid to the defendants, at the time of its execution, the sum of $800, and agreed to pay the balance on the 10th day of August, 1910, and the respondents agreed to deliver to said Hilda Hansen on said day a warranty deed to said land, with an abstract showing good title in respondents, and time was specifically made of the essence of the contract. A few days after the execution of the contract, it was assigned by Hilda Hansen to the plaintiff in this action, the appellant here, who ever since has been and now is the holder of the same.

Shortly after entering into the contract, the respondents left for an extended trip through Europe, leaving their business in charge of one C. P. Lee, a brother of respondent P. P. Lee. On the 10th day of August, 1910, appellant, accompanied by his attorney, W. H. Heaton, went to the office of the respondent P. P. Lee, made inquiries concerning the deed which he was to receive and an abstract of title to said land, and was referred to C. P. Lee, as the agent for said P. P. Lee. He saw C. P. Lee and made a demand for the deed and abstract. He was informed by Mr. Lee that the papers were at the office of Messrs. Bugge & Swartz, who were attorneys for P. P. Lee. He and his attorney accompanied Mr. Lee to the office of Bugge & Swartz, where the

appellant again demanded the deed and the abstract, and according to his testimony, tendered the purchase price. The tendering of the purchase price is denied by the respondents, but it is admitted that he demanded the deed and abstract, and we think it is not too much to say that, under all the testimony, it was understood that he was ready to pay the amount due on the contract. He was there told by one of the firm of lawyers—Mr. Swartz—that he knew nothing about the abstract; that he would try to get into communication with his partner Mr. Bugge and ascertain its whereabouts, and if it had not been made, he would immediately order the abstract made. The appellant was then prevailed upon to wait until the following morning to see if the abstract could be obtained, but it was distinctly understood, and this is admitted, that there was no advantage to be obtained by delay. The next morning he called at the office of Mr. C. P. Lee, and again demanded the deed and abstract, and made a tender of the money due. Mr. Lee informed him that he knew nothing more about the matter than he did the day before, and asked him to go down to the office of Bugge & Swartz again with him, which the appellant declined to do. Appellant then made tender of the money and, upon the deed and abstract not being forthcoming, elected to rescind the contract, and notified Mr. Lee that he would and had rescinded it, and demanded the money paid on the contract; and in due time this action was brought for the recovery of the amount paid, with interest on the same.

We are not able to reach the same conclusion that the trial judge did as to the equities of this case. There is unfortunately a very sharp conflict in the testimony; but we think that there is sufficient uncontradicted testimony to establish the right of the appellant to a rescission of the contract and the recovery of the money claimed. The court found the facts practically as we have set them forth in the statement, but found that the office of Bugge & Swartz was the proper place in which to transact business, and that plaintiff

had notice of that fact. It also found that, at the time of the attempted rescission by plaintiff, he did not in any manner tender to defendants any reconveyance of said premises to place them *in statu quo;* that it was the duty of the plaintiff, and a condition precedent to rescission, to, at his own expense, record the assignment to him from Hilda Hansen, and to execute and record, or offer to record, his own reconveyance to defendants; that the plaintiff did not record said assignment until after he had received written notice from defendants that they were ready and willing to perform as to all matters about which the plaintiff complained; that no reconveyance was offered, nor any notice of such offer or tender given defendants or their attorneys until after the trial of the cause, and that the quitclaim tendered at the trial was not executed until after the commencement of the action.

The court further found that the defendants procured such abstract of title with all possible diligence after demand therefor on the 10th day of August, 1910, and that plaintiff received notice in writing of defendants' readiness and ability to perform according to the tenor of such written contract, prior to the time plaintiff caused his assignment from Hilda Hansen to be recorded, prior to any tender or offer of reconveyance to remove the cloud from defendants' title, and prior to his having placed the defendants in default under said contract. The court concluded that the defendants were entitled to recover their costs and disbursements; found that C. P. Lee, prior to the defendants' departure for Europe, was given a power of attorney in writing to act for P. P. Lee, but that such power related only to transactions of the firm of P. P. Lee & Co., and did not include authority to act with reference to the transactions involved in this case, except to deliver the papers to Bugge & Swartz who were said defendants' agents for such purpose.

This finding of the court, which is an important finding, we think is not sustained by the record; at least, not by the

construction that we place upon the power of attorney which is an exhibit in the case, and on letters written by the respondent P. P. Lee which we will notice hereafter. The power of attorney is too long to be set out in detail; but, after appointing C. P. Lee attorney for the transaction of business of the firm to which P. P. Lee belonged, and mentioning what business of the firm was to be performed, the instrument continues, "to be my personal representative in any and all matters or transactions with reference to said firm or said business, or any other matters that may arise during my absence demanding my personal attention," with limitations prescribed; expressly negativing the idea that the appointment was made and authority conferred with reference only to the firm business, and showing conclusively that the said C. P. Lee was authorized to transact other business than the firm business.

That that was the construction placed upon this power of attorney by the parties themselves, is shown by the correspondence between them. C. P. Lee testifies that he had frequent conversations with Mr. Mauk, the appellant, concerning this business; that at one time Mauk asked him to write to his brother and ask him if he could get an extension of time, stating that he—Mauk—would pay for the cablegram if his brother would answer immediately. In none of these prior conversations was Mr. Mauk referred to the firm of Bugge & Swartz, but it seemed to be a mutual understanding that C. P. Lee was the authorized agent as far as this land business was concerned. Mr. Lee did write to his brother, as he says, in accordance with the request of Mauk, but meeting Mauk a few days afterwards he informed him that, while the brother had not answered his communication in respect to the application for time because not sufficient time had elapsed, yet he was satisfied from what his brother had written to him concerning other matters and concerning the expenditure of his money, that he would not grant the extension and wanted the money

promptly paid. This is denied by the appellant Mauk; but, conceding it to be true, it is difficult to see in what way it would reflect on Mauk's interest in this matter. It would rather tend to the view that, after Mauk had been informed that he could not get the extension, he set himself to work to raise the money to meet the requirements of the contract. However, in a letter from Norway, dated July 27, 1910, written by the respondent to his brother C. P. Lee, in referring to this transaction, he said: "You must get the $3,000 from Mauk, and then I want you to take $3,000 more to pay the smallest one," referring to some notes he owed. Again he said: "If Mauk has not paid the contract, I want same advertised and foreclosed at once;" and there were other excerpts from letters bearing on this question, tending to show conclusively that C. P. Lee, and not the attorneys, Bugge & Swartz, was the agent of P. P. Lee in relation to this matter, and that Bugge & Swartz were employed only to do the legal part of the business, viz., to prepare the deed and see that the papers were properly executed.

There was a great deal of immaterial testimony in the case, which provoked some heated discussion between the parties as to whether or not tender was made at the time of the meeting in the office of Bugge & Swartz, or whether tender of the money to C. P. Lee was made at the first call at the office of the respondent. But whatever may be said of those contentions, it is undisputed that a tender was made to C. P. Lee at his office on the 11th day of August, and a demand made for the deed and abstract. It was the duty of the respondent P. P. Lee, when he left the country leaving behind him an obligation of this kind, to appoint an agent and to notify the other party to the obligation who the agent was, so that he could pay the money according to the contract. The appellant went where he naturally would be expected to go—to the office of the respondent, and made his demand on the agent, as we understand the record; and

he was under no obligations to go a second time to the office of the attorneys, or to wait any longer for the abstract of title. The contract provides that an abstract of title shall be furnished, and of course the contract must be construed to mean that the abstract of title would accompany the deed, or that it should be furnished before the time expired for a forfeiture of the contract, so that it could be examined. The court finds that the defendants procured such abstract of title with all possible diligence after demand therefor on the 10th day of August, 1910, but the abstract should have been ready to accompany the deed which it was the duty of the respondents to make or to deliver at that time. It will not avail parties who enter into such contracts as this to allow the time to expire, and then excuse themselves by saying that they would thereafter do with all possible diligence what should have been done at that time.

If the appellant had failed to make the payment when it was due by the terms of this contract or for four days after that date, there can be no doubt that the payment made could have been forfeited at the option of the respondents; and if the land, instead of declining had sharply enhanced in value, there is little doubt that such election would have been made. The terms of the contract were definite and time was expressly made the essence of the contract. Under the contract, it was plainly the duty of each party to comply with its terms, and a failure to do so on the part of either, whether purposely or by neglect or misfortune, conferred the right of rescission on the other. The object of entering into the contract was to definitely determine and fix the rights of the parties to it. There is no contention in this case that the abstract would have been ready even if the appellant had gone again to the office of attorneys Bugge & Swartz. In fact, it appears that it was not ready, and the first showing of respondents being ready to deliver was a letter written by Bugge & Swartz to appellant on the 14th day of August, four days after the demand was made,

that the abstract had been completed and that the respondents were ready to carry out the terms of the agreement. Mr. Bugge candidly admitted that the abstract had not been prepared on time through a misunderstanding between him and C. P. Lee.

The other matters, in relation to the recording of the assignment and the tender of the quitclaim deed, are not controlling. It is true the assignment was not recorded before the demand was made, but the respondents and their agent had actual notice of the assignment. They knew that Mauk was the owner of this contract, as shown by the testimony of the agent and the correspondence of the respondent P. P. Lee himself. The tender of the quitclaim deed was a matter which really did not reach the merits of the case, and it was not upon this issue that the defense to the action was based. This was a matter which the court, if he deemed it necessary, would order to be attended to at any time in the trial of the cause before judgment issued in favor of the appellant.

The case was tried and contested upon the theory that the appellant had not made his demand for the deed and the abstract, and had not made a tender to the agent of the respondents, and upon the further theory that the abstract was really furnished within a reasonable time. Having found against the respondents upon these controlling propositions, we are compelled to reverse the order of the lower court, which is instructed to enter a judgment for the plaintiff for the relief demanded.

ELLIS, CROW, and MORRIS, JJ., concur.